IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MARY PARNELL,                        )
                                     )
                    Plaintiff,       )
                                     )
vs.                                  )         Case No. 07-1292-MLB
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of                      )
Social Security,                     )
                                     )
                    Defendant.       )
_____)


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On April 27, 2007, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at 14-22).  Plaintiff alleged disability beginning April 1, 2002 (R. at 14).  Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2009 (R. at 16).  At step one, the ALJ found

4

that plaintiff has not engaged in substantial gainful activity since April 1, 2002, the alleged onset date (R. at 16).  At step two, the ALJ found that plaintiff had the following severe impairments: back and shoulder pain; mild degenerative changes in the lumbothoracic spine; asthma; headaches; and obesity.  The ALJ also found that plaintiff has the "non-medically determinable impairment of fibromyalgia" (R. at 16).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17).  After determining plaintiff's RFC (R. at 19), the ALJ found at step four that plaintiff could perform past relevant work as a dental assistant (R. at 22).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 22).

**III.  Did the ALJ err in finding that fibromyalgia was a non-medically determinable impairment?**

The burden of proof at step two is on the plaintiff.  See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect

5

on his or her ability to do basic work activities.[1]  <u>Williams</u>,844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work.  <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).  The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists.  20 C.F.R. § 404.1513(a), § 416.913(a).  Evidence from other medical sources, including

---

[1]Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3.  <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 (10th Cir. 2004).

therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work.  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

The ALJ provided the following reason in support of his step two finding regarding fibromyalgia:

> Fibromyalgia is mentioned in parts of the claimant's medical file. However, it does not appear that a definitive diagnosis of this condition was ever made. At Exhibit 5F/37 Dr. Ohaebosim states that he referred the claimant to a neurologist who diagnosed fibromyalgia. That neurologist, Dr. Rizwan Hassan, at Exhibit 9F/67, only states that he is considering fibromyalgia. Subsequently he notes only that he gave the claimant some information about the disease (Exhibit 9F/68). A further evaluation by Dr. Sitha Miller includes a chart on which some circles have been traced around diagrammed tenderpoints (Exhibit 11F/76); there is some inconsistency in the way that the positive tenderpoints are illustrated, and he notes just 5 tenderpoints at (Exhibit 11F/82). In Dr. Miller's written diagnosis, though, he notes that the claimant does not have tenderpoints consistent with fibromyalgia (Exhibit 11F/81). An earlier physical examination from February of 1999 notes that the claimant has some diffuse pain, but no triggering was observed (Exhibit 9F/61). The claimant is not now, nor has she been in treatment for fibromyalgia. Other scans of the claimant's internal organs have revealed no abnormalities or causes for concern (Exhibit 6F/38) (Exhibit 7F/40) (Exhibit 1F/2,3) (Exhibit 9F/50). Social Security Ruling 96-4p states that "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable

7

> physical or mental impairment." Therefore, in
> the absence of clear, objective
> documentation, the undersigned finds that the
> claimant's allegation that she suffers from
> fibromyalgia cannot be medically determined.

(R. at 17).

Dr. Ohaebosim, in his treatment notes, indicated fibromyalgia on May 4, 2005 (R. at 240). In his letter dated August 30, 2006, Dr. Ohaebosim stated that he referred plaintiff to a neurologist on May 4, 2005, who found that plaintiff had fibromyalgia (R. at 236). The neurologist, Dr. Hassan, stated on July 11, 2005 that one of his impressions was: "Unspecified myalgia, consider fibromyalgia" (R. at 251). On August 3, 2005, after considering the test results and the physical examination, he assessed: "most likely fibromyalgia" (R. at 250).

Dr. Miller conducted a consultative examination of the plaintiff on November 15, 2006 (R. at 279-281). Dr. Miller's notes state the following:

> Positive tender points of [1] pectoralis
> muscle-just lateral to second costo-chondral
> junction, [2] 2 cm below lateral epicondyle,
> [3] upper gluteal area, and [4] medial knee
> in area of Anserine bursa, and [5]
> gastrocnemius-Achilles tendon junction.
> Positive for control points: None. (see
> enclosure).

(R. at 280). Dr. Miller's report included a fibromyalgia worksheet, which listed in narrative form 8 paired tender

points.[2]  The worksheet also shows the diagram of a human body
with the numbers of the tender points located on the body.  At
the bottom of the worksheet, there is an instruction which
states: "If positive place a circle around it, if it is negative
place an X through it" (R. at 286).  The numbers in front of all
8 tender points listed in narrative form are circled.  The body
diagram has 5 points circled (R. at 286).  The latter is
consistent with Dr. Miller's narrative listing 5 positive paired
tender points (R. at 280).  Dr. Miller states in his report:
"History of fibromyalgia, point tenderness not consistent with
fibromyalgia" (R. at 281).  The ALJ acknowledged that there is
some inconsistency with the way the positive tender points are
illustrated in the diagram (R. at 17), but noted that Dr.
Miller's written report indicated 5 paired tender points, and
further noted that Dr. Miller found that point tenderness was not
consistent with fibromyalgia (R. at 17, 280, 281).

Because of the ambiguity or inconsistency concerning the
contents of Dr. Miller's narrative report and the fibromyalgia
worksheet, and in light of the other medical evidence in the
case, plaintiff argues that it is unclear whether he had the "11
of 18 tender points" required to diagnose fibromyalgia (Doc. 9 at
9).  Defendant argues that there is no medical evidence of tender

---

[2]The positive tender points which Dr. Miller listed at R. at
280 match the 3rd, 4th, 5th, 7th, and 8th paired tender points listed
on the fibromyalgia worksheet (R. at 286).

or trigger point findings consistent with fibromyalgia (Doc. 14 at 13).  Although there is some inconsistency in the way the positive tenderpoints are illustrated in the fibromyalgia worksheet, Dr. Miller listed 5 positive tender points in his report (R. at 280).  If all 5 paired tender points were positive, that would only total 10 positive tender points.  As both sides have indicated, the rule of thumb is that the patient must be positive on at least 11 of the 18 tender points to be diagnosed with fibromyalgia.  Gilbert v. Astrue, 231 Fed. Appx. 778, 783 (10th Cir. Apr. 11, 2007); Brown v. Barnhart, 182 Fed. Appx. 771, 773 n.1 (10th Cir. May 25, 2006); Glenn v. Apfel, 102 F. Supp.2d 1252, 1259 (D. Kan. 2000); see also www.fibromyalgia-symptoms.org /fibromyalgia_diagnosis.html (June 6, 2008); www.fibromyalgia.ncf.ca/womanfm.htm (June 6, 2008); www.revolutionhealth.com/conditions/bones-joints-muscles/ fibromyalgia/signs-symptoms/tender-points (June 6, 2008).

   However, the fibromyalgia worksheet used by Dr. Miller only references 8 paired tender points, or 16 total tender points (R. at 286).  It appears that Dr. Miller found 5 positive paired tender points, or 10 positive tender points out of the 16 set forth on the worksheet.  However, a diagnosis of fibromyalgia is based on a finding of 11 of 18 positive tender points, not 16 tender points.  Thus, it is unclear from Dr. Miller's report whether plaintiff had the 11 of 18 tender points needed to

diagnose fibromyalgia.

Given that both plaintiff and defendant agree that a diagnosis of fibromyalgia is based on positive findings of pain in 11 of 18 tender or trigger points (Doc. 9 at 9; Doc. 14 at 13), because it cannot be determined from Dr. Miller's report whether or not plaintiff has the 11 of 18 positive tender points needed to diagnose fibromyalgia, and in light of Dr. Hassan's assessment that plaintiff most likely had fibromyalgia, this case should be remanded in order for the ALJ to obtain clarification on this issue and/or obtain additional testing.[3]

In support of his finding that fibromyalgia was not a medically determinable impairment, the ALJ also stated that plaintiff had never been in treatment for fibromyalgia (R. at 17).  As defendant noted in his brief (Doc. 14 at 12), plaintiff testified that nobody discussed with her treatment for fibromyalgia, or what she should do for fibromyalgia (R. at 316-317).  On the other hand, the ALJ asked plaintiff at the hearing

---

[3]The ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.  The ALJ may ordinarily require counsel to identify the issue or issues requiring further development.  Maes v. Astrue, 522 F.3d 1093, 1096 (10th Cir. 2008); Hawkins v. Chater, 113 F.3d 1162, 1164, 1167-1168 (10th Cir. 1997).

In a letter dated March 7, 2007, plaintiff's counsel wrote the ALJ, prior to the issuance of his decision, about the inconsistency in Dr. Miller's report concerning the number of tender or trigger points, and asked the ALJ to request clarification of Dr. Miller's opinion regarding whether plaintiff had fibromyalgia (R. at 199).

if Dr. Ohaebosim had explained to her why he "gives you a pain medication for fibromyalgia" (R. at 317).  This would indicate that the ALJ believed that Dr. Ohaebosim was giving plaintiff pain medication for fibromyalgia, and contradicts his statement in his decision that plaintiff was not being treated for fibromyalgia (R. at 17).  This contradiction should also be addressed on remand.

Because this case is being remanded for other reasons, and in order to expedite a final resolution of this case, the court will also briefly address one other issue concerning the ALJ's rationale for his finding that fibromyalgia was not a medically determinable impairment even though it was not specifically discussed by the parties.  In his rationale for finding that fibromyalgia could not be medically determined, the ALJ stated that other scans of the plaintiff's internal organs revealed no abnormalities or causes for concern (R. at 17).  However, the symptoms of fibromyalgia are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia. Gilbert, 231 Fed. Appx. at 783; Brown, 182 Fed. Appx. at 773 n.1 Fibromyalgia is diagnosed entirely on the basis of patients' reports and other symptoms.  Brown, 182 Fed. Appx. at 773 n.1. For this reason, when this case is remanded, the ALJ would be well advised to explain how scans of the internal organs are relevant to a diagnosis of fibromyalgia if the ALJ is going to

12

rely on these scans in support of a finding that fibromyalgia is not a medically determinable impairment.

Plaintiff raises other issues, including the RFC findings of the ALJ, the weight accorded to the opinions of Dr. Ohaebosim, and plaintiff's credibility (by ignoring plaintiff's reports of pain). Most of plaintiff's arguments on these issues are closely related to the issue of plaintiff's fibromyalgia. Because of the ambiguities in the evidence and the contradiction by the ALJ as to whether plaintiff had treatment for fibromyalgia, the ALJ, on remand, shall make a new determination of whether or not fibromyalgia is a medically determinable impairment, and if so, whether it is a severe impairment. After that determination has been made, the ALJ shall then reevaluate the opinions of Dr. Ohaebosim, make new credibility findings, and make new RFC findings.

The court will briefly address two specific issues raised by the plaintiff regarding the ALJ's RFC findings. Plaintiff argues that the ALJ provided no limitations due to plaintiff's shoulder pain or for plaintiff's headaches, despite the fact that they were found to be severe impairments. The ALJ, in making his RFC findings, gave substantial weight to the opinions of Dr. Miller (R. at 21). Dr. Miller's RFC report mentioned plaintiff's history of shoulder and back pain (R. at 283, 285). Thus, the limitations set forth by Dr. Miller, and adopted by the ALJ, take

into account plaintiff's shoulder and back pain.  The ALJ also
found that there was nothing in the medical record indicating
that plaintiff's headaches resulted in any functional limitations
(R. at 21).  Plaintiff failed to point to any evidence in the
medical record indicating limitations due to her headaches.
Furthermore, her treating physician, Dr. Ohaebosim, in his letter
opining that plaintiff could not work, did not even mention
headaches as one of her impairments (R. at 236).  Therefore, the
court finds no error by the ALJ regarding these two issues.

**IV.  Did the ALJ err in his step four finding?**

At step four, the ALJ is required by Social Security Ruling
(SSR) 82-62 to make findings of fact regarding: 1) the
individual's residual functional capacity, 2) the physical and
mental demands of prior jobs or occupations, and 3) the ability
of the individual to return to the past occupation given his or
her residual functional capacity.  Henrie v. United States Dep't
of HHS, 13 F.3d 359, 361 (1993).  Thus, at the third or final
phase of the analysis, the ALJ determines whether the claimant
has the ability to meet the job demands found in phase two
despite the mental and/or physical limitations found in phase
one.  At each of these three phases, the ALJ must make specific
findings.  Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir.

14

2007);  Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).[4]
An ALJ can comply with these requirements if he quotes the VE's
testimony with approval in support of his own findings at phases
two and three of the step four analysis.  Doyal v. Barnhart, 331
F.3d 758, 760-761 (10th Cir. 2003).[5]  At the second phase of the

_____

[4]In Winfrey, the court noted that the Secretary glossed over
the absence of the required ALJ findings by relying on the
testimony of the vocational expert (VE) that plaintiff could meet
the mental demands of his past relevant work, given his mental
limitations as found by the ALJ.  The court stated that this
practice of delegating to a VE many of the ALJ's fact finding
responsibilities at step four appears to be of increasing
prevalence and is to be discouraged.  The court went on to say as
follows:

> Requiring the ALJ to make specific findings
> on the record at each phase of the step four
> analysis provides for meaningful judicial
> review.  When, as here, the ALJ makes
> findings only about the claimant's
> limitations, and the remainder of the step
> four assessment takes place in the VE's head,
> we are left with nothing to review...a VE may
> supply information to the ALJ at step four
> about the demands of the claimant's past
> relevant work...[but] the VE's role in
> supplying vocational information at step four
> is much more limited than his role at step
> five...Therefore, while the ALJ may rely on
> information supplied by the VE at step four,
> the ALJ himself must make the required
> findings on the record, including his own
> evaluation of the claimant's ability to
> perform his past relevant work.

Winfrey, 92 F.3d at 1025.

[5]The ALJ's findings in Doyal were as follows:

> The vocational expert testified that the
> claimant's past relevant work as a
> housecleaner and sewing machine operator

step four analysis, the ALJ must make findings regarding the
physical and mental demands of the claimant's past relevant work.
When the ALJ essentially skips the second phase of the step four
analysis by not making any findings regarding the physical and
mental demands of claimant's past work, either as performed or as
it is generally performed in the national economy, then the case
shall be remanded in order for the ALJ to make the specific
factual findings regarding the demands of claimant's past
relevant work.  Clardy v. Barnhart, 2004 WL 737486 at *6 (D. Kan.
Apr. 5, 2004).

The ALJ's step four findings are as follows:

> 6. The claimant is capable of performing past
> relevant work as a dental assistant. This
> work does not require the performance of
> work-related activities precluded by the
> claimant's residual functional capacity (20

---

> would be classified as light and unskilled,
> and her past relevant work as an activities
> director would be classified as light and
> semiskilled.... The vocational expert
> indicated that the claimant's past relevant
> work as a housecleaner and sewing machine
> operator did not require lifting more than 20
> pounds, walking for prolonged periods, or
> performing tasks requiring bilateral normal
> grip strength.

Doyal, 331 F.3d at 760.  The ALJ found that plaintiff could
perform past relevant work as a housecleaner and a sewing machine
operator.  331 F.3d at 761.  As noted above, the ALJ cited with
approval the testimony of the vocational expert concerning the
physical demands of the 2 past jobs which the ALJ found that the
claimant could still perform.

CFR 404.1565 and 416.965).

The claimant has performed this job within
the past 15 years. The job is considered
skilled at the SVP6 level, but the claimant
was employed at it for more than 10 years,
and has learned how the job is done. The
claimant earned income at this job in excess
of the level that is considered substantial
gainful activity.

In comparing the claimant's residual
functional capacity with the physical and
mental demands of this work, the undersigned
finds that the claimant is able to perform it
as actually and generally performed. This job
is performed at the light exertional level
and does not require exposure to
environmental irritants according to the
vocational expert. The vocational expert
affirmed that her testimony was consistent
with the information provided in the
Dictionary of Occupational Titles in
accordance with SSR 00-4P.

(R. at 22).

The ALJ included in plaintiff's RFC exertional, postural and

environmental limitations (R. at 19).  The work history

evaluation provided by the vocational expert (VE) references the

exertional nature of work as a dental assistant (i.e., light

work, but does not mention either postural or environmental

demands of the work (R. at 205).  The VE, except to reference the

work history evaluation, which indicated that the dental

assistant position is light work, did not testify as to either

the postural or environmental demands of the job (R. at 319-321).

The ALJ stated that the job of dental assistant is performed at

the light exertional level, but did not make any findings

regarding the postural or environmental demands of plaintiff's past work, either as performed, or as generally performed in the national economy.  Unlike the case in <u>Doyal</u>, the ALJ did not quote the VE's testimony with approval in support of his own findings regarding the postural or environmental demands of plaintiff's past work.  In fact, it would have been impossible for the ALJ to quote the VE's testimony with approval in support of his findings at phase two regarding the postural or environmental demands of the past job because the VE never testified regarding the postural or environmental demands of the past job.  The ALJ stated in his decision that the VE testified that the job of dental assistant "does not require exposure to environmental irritants" (R. at 22).  However, a review of the transcript does not demonstrate that the VE testified that the job of dental assistant "does not require exposure to environmental irritants" (R. at 319-321).[6]

     The factual situation before the court in this case is similar to the factual situation before the court in <u>Hill v. Astrue</u>, Case No. 07-1028-MLB (recommendation and report, Doc. 10 at 15-18, Sept. 7, 2007); affirmed by district court, Doc. 12, Nov. 1, 2007 and Doc. 20, Dec. 18, 2007).  The court reversed the

_____

     [6]The VE did testify that the job of dental technician is eliminated because of dust in the air relating to plaster casting and things of that nature (R. at 320), but the VE never testified that the job of dental assistant does not require exposure to environmental irritants.

18

decision of the Commissioner and remanded the case for further hearing because of defendant's failure to make the phase two findings required by SSR 82-62 and the case law in the 10th Circuit.

In the case of Frantz v. Astrue, 509 F.3d 1299, 1303-1304 (10th Cir. 2007), in which the claimant was found to have a severe mental impairment, the ALJ failed to develop any evidence or make findings regarding the mental demands of the claimant's past relevant work.  The VE testified that, based upon the claimant's RFC, claimant could return to her past work as previously performed and as generally performed in the national economy.  However, the VE did not testify about the mental demands of claimant's past relevant work, and the work history report the VE filled out said nothing about that issue.  The ALJ's conclusory statement that the exertional and non-exertional requirements of the past job were consistent with claimant's RFC was held to be insufficient under Winfrey to discharge his duty to make findings regarding the mental demands of claimant's past relevant work.  The court also distinguished Doyal because, unlike that case, there was no VE testimony and no evidence of any kind to establish the mental demands of claimant's past relevant work and thus no evidence that the claimant retained the mental RFC to perform her past work.

More recently, in Bowman v. Astrue, 511 F.3d 1270, 1271,

19

1273 (10 Cir. 2008), the 10th Circuit again held that the ALJ erred at step four when he failed to make the necessary findings at phase two regarding the demands of the claimant's past work. In that case, despite the fact that the VE identified the Dictionary of Occupational Titles (DOT) code for the claimant's prior job, the court nonetheless held that the ALJ did not make the necessary findings at phase two of the step four analysis.

The ALJ's step four analysis in the case before the court (Parnell) suffers from the same problems as those set forth in Hill, Frantz, and Bowman. The ALJ did not make findings regarding the postural or environmental demands of the job of dental assistant. The VE did not testify as to the postural or environmental demands of the past job. The ALJ apparently relied on the VE's testimony that, based on the RFC findings set forth by the ALJ, plaintiff could perform the past job of dental assistant. The ALJ made a conclusory statement that in comparing plaintiff's RFC with the physical and mental demands of the job of dental assistant, plaintiff is able to perform it as actually and generally performed. The court finds that this conclusory statement by the ALJ is insufficient under Winfrey to discharge the ALJ's duty to make findings regarding the postural and environmental demands of plaintiff's past relevant work. This case is unlike Doyal because the ALJ did not quote the VE's testimony with approval in support of his own findings at steps

20

two and three of the analysis.  In fact, there was no VE
testimony of any kind regarding the postural or environmental
demands of plaintiff's past work.  Therefore, this case shall be
remanded in order for the ALJ to comply with SSR 82-62 and the
related case law in the 10th Circuit, as set forth above.

Defendant argues in his brief that there is evidence in the
record from the plaintiff setting forth the physical demands of
plaintiff's past job of dental assistant as she performed it
(Doc. 14 at 26).  However, none of this evidence was even
mentioned by the ALJ in his decision, and he made no findings
regarding the physical demands of this past job.  An ALJ's
decision should be evaluated based solely on the reasons stated
in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th
Cir. 2004).  A decision cannot be affirmed on the basis of
appellate counsel's post hoc rationalizations for agency action.
Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A
reviewing court may not create post-hoc rationalizations to
explain the Commissioner's treatment of evidence when that
treatment is not apparent from the Commissioner's decision.
Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  By
considering legal or evidentiary matters not considered by the
ALJ, a court risks violating the general rule against post hoc
justification of administrative action.  Allen v. Barnhart, 357
F.3d 1140, 1145 (10th Cir. 2004).  Because none of this evidence

was even mentioned by the ALJ in his decision, it will not be considered by the court.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on June 10, 2008.


                          s/John Thomas Reid
                          JOHN THOMAS REID
                          United States Magistrate Judge